UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MANVILLE & SCHELL, P.C.,

        Plaintiff,                  Case No. 1:19-cv-281

v.                                         Hon. Paul L. Maloney

HANNAH C. STRICKER and
BOOKKEEPING SOLUTIONS OF
TRAVERSE CITY, LLC,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

This matter is now before the Court on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) filed by defendants Hannah C. Stricker and Bookkeeping Solutions of Traverse City, LLC (ECF No. 11).

    **I.**    **Plaintiff's claims**

Plaintiff Manville & Schell, P.C. ("MSPC") is a certified public accounting firm located in Traverse City, Michigan. Amend. Compl. (ECF No. 9, PageID.84). MSPC employed defendant Hannah C. Stricker ("Stricker") as a bookkeeper. *Id*. MSPC alleged that Stricker violated the terms of a June 3, 2009 "Non-Compete Agreement" ("Agreement") (ECF No. 9-1) by using MSPC's confidential and proprietary documents "to aid her efforts to secure clients of MSPC for her new accounting business." [1] *Id*. Among other things, MSPC alleged that:

> 2.    Defendant Stricker, while employed by MSPC, took legally protected information, primarily by accessing MSPC client documents using cloud-based software, to print and save the documents for her use with her own new company, "Bookkeeping Solutions of Traverse City, LLC." Defendant Stricker formed her new competing company while still employed at MSPC; and used her intimate

---

[1] Defendant Stricker was known as Hannah Falk when she signed the Agreement.

> knowledge of MSPC clients and the documents taken from MSPC to solicit selected clients of MSPC, in violation of the terms and conditions of the non-solicit provisions of her agreement with MSPC.
>
> 3.  While employed and being paid by MSPC, Defendant Stricker misappropriated sensitive, proprietary and confidential information developed by MSPC and used that information against MSPC to solicit away from it businesses and clients that MSPC had developed.

*Id*. MSPC alleged that "[b]efore her last day of employment, Stricker accessed MSPC's proprietary software during and after working hours and downloaded, e-mailed, and printed confidential MSPC client documents, including tax returns, tax projections, authorizations, schedules, and profit and loss statements for clients of MSPC," and that "[t]wenty former clients of MSPC announced that they no longer desired to have MSPC do their accounting or tax work in connection with Stricker announcing her decision to resign from MSPC." *Id*. at PageID.87.

MSPC contends that this Court has original subject matter jurisdiction over the action under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq*. and 28 U.S.C. § 1331.[2] *Id*. at PageID.85. MSPC's amended complaint contains four counts. In Count I, MSPC alleged that defendants violated the DTSA, which provides that:

> An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce.

18 U.S.C. § 1836(b)(1). Here, MSPC alleged that Stricker misappropriated "confidential, proprietary, and trade secret information" from MSPC which "was not generally known, nor readily ascertainable through proper means, and included specific financial, tax, bookkeeping and accounting needs of its clients." *Id*. at PageID.88. MSPC also alleged that "[its] trade secrets are related to a [sic] products or services that are used in, or intended for use in, interstate commerce."

---

[2] Some courts refer to the DTSA as the "Defense of Trade Secrets Act" or "Defense Trade Secrets Act."

2

*Id*. at PageID.87.    While MSPC seeks relief against both defendants, this claim is based on defendant Stricker's misappropriation of information.

In Count II, MSPC alleged breach of contract, specifically that Stricker breached material terms of the Agreement by performing accounting work for a number of MSPC clients for whom she performed accounting work while employed with MSPC, and refusing "MSPC's demands to honor the agreed upon obligations to pay for the accounts wrongfully taken." PageID.89-91.  While MSPC seeks relief against both defendants, this claim is based on defendant Stricker's breach of the Agreement.

In Count III, MSPC alleged that defendants engaged in "Tortious Interference with Contractual, Business Relations and/or Future Expectations."  PageID.91-92. In this regard, MSPC alleged that, "[d]efendant Stricker clandestinely, while on company premises and off premises at home, and before she resigned from MSPC to work at her competing business, misappropriated confidential information regarding MSPC clients," and that "[b]y and through unethical, illegal, and/or unlawful means, defendants directly interfered with MSPC's business expectations" and that as a direct and proximate result of the interference, MSPC lost a number of clients.  Page ID.92.

In Count IV, MSPC alleged that defendant Stricker breached fiduciary duties she owed to MSPC as "an employee and individual that MSPC had reposed trust and confidence to protect its goodwill, reputation and business advantages with its clients."  PageID.93.  While MSPC seeks relief against both defendants for "loss of reputation and other damages caused by the disparagement of [MSPC's] business reputation," the allegations only address defendant Stricker's "raid" of MSPC's customers "in breach of her fiduciary duties to MSPC."  *Id*.

Defendants have moved to dismiss MSPC's complaint. First, they seek to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1), because this Court lacks subject jurisdiction over MSPC's claim under the DTSA. Second, defendants seek to dismiss Count II (breach of contract) and Count III (tortious interference) pursuant to Fed. R. Civ. P. 12(b)(6).

### II.     Defendants' motion to dismiss

#### A.    The DTSA claim

Defendants seek to dismiss the MSPC's DTSA claim for lack of subject matter jurisdiction. "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 377 (1994). The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1332 (diversity of citizenship jurisdiction). *Arbaugh v. Y & H Corporation*, 546 U.S. 500, 513 (2006). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (internal citations omitted). "[W]hen subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction in order to survive the motion to dismiss." *Giesse v. Secretary of Department of Health and Human Services*, 522 F.3d 697, 702 (6th Cir. 2008).

A motion under Fed. R. Civ. P. 12(b)(1) may be brought either as a facial attack or a factual attack. *Gentek Building Products, Inc. v. Steel Peel Litigation Trust*, 491 F.3d 320, 330 (6th Cir. 2007).

> A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading. When reviewing a facial attack, a district court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss. If those allegations establish federal claims, jurisdiction exists.

*Id.* (internal citation omitted). "Where, on the other hand, there is a factual attack on the subject-matter jurisdiction alleged in the complaint, no presumptive truthfulness applies to the allegations." *Id.* "When a factual attack . . . raises a factual controversy, the district court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Id.*

Here, defendants have raised a facial attack. First, MSPC "failed to allege that the trade secrets which have allegedly been misappropriated are used in or intended for interstate commerce." Defendants' Brief (ECF No. 12, PageID.146). Second, MSPC's alleged trade secrets fall outside of the scope of the DTSA. Because MSPC's tax preparation business is intrastate (preparing taxes for Michigan businesses), the trade secrets were not related to a product or service in interstate commerce within the meaning of the DTSA. *Id.* at PageID.147-148.[3]

"A claim for trade secret appropriation may be brought under the DTSA 'if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce.' 18 U.S.C. § 1836(b)(1)." *BioPoint, Inc. v. Attis*, No. CV 20-10118-RGS, 2020 WL 1446725 at *1 (D. Mass. March 25, 2020). "In order to plead a claim for violation of the DTSA, a plaintiff must allege that it lawfully owned information of independent economic value that it took reasonable measures to keep secret, and that the defendant under consideration either acquired, disclosed, or used, improperly." *ATS Group, LLC v. Legacy Tank & Industrial Services LLC*, 407 F. Supp. 3d 1186, 1197 (W.D. Okla. 2019) (citing 18 U.S.C. § 1839 (definitions) and *Southern Field Maintenance & Fabrication LLC v. Killough*, No. 2:18-cv-581-GMB, 2018 WL 4701782 at *2 (M.D. Ala. Oct. 1, 2018)).

---

[3] In a related argument, defendants contend that the Court should not consider the financial data of MSPC's clients in determining the scope of the DTSA. *See* PageID.148. As discussed, *infra*, the Court addressed jurisdiction on the basis of MSPC's tax preparation business, not the businesses of its clients.

In resolving this motion, Court will address two questions.  First, whether MSPC's "service" of preparing state and federal income tax returns is "used in, or intended for use in, interstate or foreign commerce."  *See* 18 U.S.C. § 1836(b)(1).  Second, whether the alleged secrets are "related to" that service.  *Id.*

With respect to the first question, MSPC alleged that the preparation and filing of income tax returns involves use of e-mail and the internet, *i.e.*, "MSPC provides services to its clients, including the preparation and filing of federal and state tax returns, using proprietary software created and sold outside Michigan."  Amend. Compl. at PageID.87.  In addition, MSPC alleged that it "delivers tax returns for its clients using email and the internet, to locations outside the state of Michigan, including Washington, DC," and that "MSPC prepares tax returns for clients that reside and do business outside the State of Michigan and engage with other clients whose principal place of business is outside of the United States."  *Id*. at PageID.87-88.  The Court concludes that MSPC's tax preparation business engages in interstate commerce because it uses the internet to deliver email and tax returns to clients both inside and outside of Michigan.  "[T]he Internet is an instrumentality and channel of interstate commerce." *United States v. MacEwan*, 445 F.3d 237, 245 (3d Cir. 2006).  "[B]ecause of the very interstate nature of the Internet, once a user submits a connection request to a website server or an image is transmitted from the website server back to user, the data has traveled in interstate commerce."  *Id*. at 244.  Viewing these allegations as true, MSPC's tax preparation services are "used in, or intended for use in, interstate commerce." *See* 18 U.S.C. § 1836(b)(1).

With respect to the second question, MSPC must demonstrate that the misappropriated trade secrets are "related to" its tax preparation services.  MSPC alleged that it "owned, controlled and possessed certain confidential, proprietary, and trade secret documents and

6

other lawfully protected information from which defendant Stricker derived a unique competitive advantage." Amend. Compl. at PageID.87. These trade secrets included "legally protected information" which Stricker obtained "primarily by accessing MSPC client documents using cloud-based software, to print and save the documents for her use with her own new company," and included "confidential MSPC client documents, including tax returns, tax projections, authorizations, schedules, and profit and loss statements for clients of MSPC." *Id*. at PageID.84, 87. MSPC also alleged that these trade secrets "are related to a [sic] products or services that are used in, or intended for use in, interstate commerce." *Id*. at PageID.87. These alleged trade secrets are the types of records which MSPC would use in preparing tax returns for its clients. For purposes of the DTSA, the Court considers these trade secrets to be related to MSPC's tax preparation services. *See generally, Morales v. Trans World Airlines*, 504 U.S. 374, 383 (1992) (the ordinary meaning of "related to" is broad, and means "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." (internal quotation marks and citation omitted.)

Viewing these allegations as true, MSPC has demonstrated that the misappropriated trade secrets are related to MSPC's tax preparation services for purposes of the DTSA. For these reasons, defendants' motion to dismiss the amended complaint for lack of subject matter jurisdiction should be denied.

### B.     Fed. R. Civ. P. 12(b)(6)

Defendants also moved to dismiss the state law claims set forth in Counts II and III pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. A complaint may be dismissed for failure to state a claim if it fails to give the defendants a fair

notice of the claim and the grounds upon which it rests. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

> [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). In this case, MSPC attached copies of the Agreement and its employee handbook to the amended complaint. *See* Exhibits (ECF Nos. 9-1 and 9-2). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

### 1. Count II (breach of contract)

Defendants contend that plaintiff's breach of contract claim should be dismissed. First, defendants contend that the only damages sought are set forth in a provision for liquidated damages in ¶ 9 of the Agreement. Second, ¶ 9 is invalid because it operates as a penalty.

As an initial matter, MSPC's breach of contract claim in Count II arises from the Agreement and seeks "[d]amages for breach of contract and as specific in paragraph 9 of the Agreement[.]" Amend. Compl. at PageID.91. While Count II also includes a boilerplate claim for

8

"[a]ny other lawful relief and/or equitable relief to which plaintiff may be entitled or awarded by the court," *id.*, it does not identify the breach of any contract other than the Agreement. Based on these allegations, the Court concludes that MSPC's breach of contract claim alleged in Count II is limited to the damages set forth in ¶ 9 of the Agreement.

Next, the provision for liquidated damages provides as follows:

> The Bookkeeper [Stricker] agrees to pay Owner [MSPC] an amount equal to twice the annual billings of any and all customers and accounts of Owner that are lost to Owner through Bookkeeper's violation of the "non-compete" terms of this agreement.

Amend. Compl. at PageID.89-91; Agreement at PageID.98. Defendants contend that this provision is invalid because it operates as a penalty.

Under Michigan law,

> A contractual provision for liquidated damages is nothing more than an agreement by the parties fixing the amount of damages in the case of a breach of that contract. *Roland v. Kenzie*, 11 Mich. App. 604, 162 N.W.2d 97 (1968). This remedy is particularly applicable where actual damages are uncertain and difficult to ascertain or are of a purely speculative nature, *Central Trust Co. v. Wolf*, 255 Mich. 8, 237 N.W. 29 (1931). The distinction between a valid liquidated damages clause and an illegal penalty depends on the relationship between the amount stipulated to in the liquidated damages clause and the subject matter of the cause of action. *Watson v. Harrison*, 324 Mich. 16, 36 N.W.2d 295 (1949); *Malone v. Levine*, 240 Mich. 222, 215 N.W. 356 (1927).

*Papo v. Aglo Restaurants of San Jose, Inc.*, 149 Mich. App. 285, 294, 386 N.W.2d 177, 181 (1986).

> Whether such a provision is valid and enforceable or invalid as a penalty is a question of law. *Moore v. St. Clair Co.*, 120 Mich. App. 335, 339, 328 N.W.2d 47 (1982). The courts are to sustain such provisions if the amount is "reasonable with relation to the possible injury suffered" and not "unconscionable or excessive." *Id.* at 340, 328 N.W.2d 47, citing *Curran v. Williams*, 352 Mich. 278, 282, 89 N.W.2d 602 (1958).

*UAW-GM Human Resource Center v. KSL Recreation Corp.*, 228 Mich. App. 486, 508, 579 N.W.2d 411 (1998).

9

> "The real question in this class of cases is, not what the parties intended, but whether the sum is, in fact, in the nature of a penalty; and this is to be determined by the magnitude of the sum, in connection with the subject-matter, and not by the words, or the understanding of the parties." *Watson*, 324 Mich. at 20 (1949) (internal quotation marks omitted).

> But where, from the nature of the contract, and the subject-matter of the stipulation for the breach of which the sum is provided, it is apparent to the court that the actual damages for a breach are uncertain in their nature, difficult to be ascertained, or impossible to be estimated with certainty; and where the parties themselves are more intimately acquainted with all the peculiar circumstances and therefore better able to compute the actual or probable damages than courts or juries from any evidence which can be brought before them,—in such cases the law permits the parties to ascertain for themselves, and provide in the contract, the amount of damages which shall be paid on a breach, and adopts their computation, or estimate, as the best and most certain mode of ascertaining the actual damage, or what sum will amount to a just compensation.

*Id.* (internal quotation marks omitted).

As an initial matter, the provision for liquidated damages does not compensate MSPC for any particular amount of money, being based on twice the "annual billings" of all of the customers and accounts which MSPC lost through Stricker's violation of the "non-compete" terms of the Agreement. *See* Agreement at PageID.97-98 ("The term 'non-compete' as used in this agreement means that Bookkeeper shall not provide bookkeeping services to any other business unless provided through the office of Owner while employed by Owner and after employment with Owner ends Bookkeeper will not provide services to any client of Owner.").[4] The Agreement does not define the operative term "annual billings" or identify how the annual billings are to be calculated (*e.g.*, whether the term "annual billings" refers to the amount billed or the amount of money actually received or what year or years are used to determine the customers' "annual billings"). The vagueness of this provision is evident from the relief requested by MSPC, which

---

[4] The Court notes that the Agreement has no ¶ 8. The "non-compete" provision appears in ¶ 7 and that the liquidated damages provision appears in ¶ 9. Agreement at PageID.97-98.

10

makes no mention of the "annual billings" formula in the Agreement. Rather, MSPC uses a different amount to measure its damages, *i.e.*, "two times the *annual revenue* by the clients referenced in paragraph 35 [of the amended complaint]" (emphasis added). PageID.91.

Defendants point out that "the amounts charged [to MSPC clients] are not indicative of the actual damages suffered by [MSPC], as the amounts which would be allegedly due flowing from a breach thereof are not 'net income' but 'gross income'." Defendants' Brief (ECF No. 12, PageID.150). Defendants' distinction between net income and gross income is illustrated in *Great Lakes Eye Institute, P.C. v. Krebs*, No. 294627, 2011 WL 321636 at *3 (Mich. App. Feb. 1, 2011). In *Great Lakes Eye Institute, P.C.*, while the appellate court ultimately found for defendant Dr. Krebs on other grounds, the court concluded that the liquidated damage provision in Krebs' employment contract was enforceable because it reflected an approximation of the employer's damages based on the net income which Dr. Krebs generated for the employer:

> The liquidated damages provision in the employment agreement provided that, if Krebs breached the restrictive covenant, plaintiff's damages would be an amount equal to 40 percent of the gross receipts attributable to Krebs's professional services for the twelve month period ending as of the month preceding Krebs's termination or $200,000, whichever was greater. Because plaintiff was receiving between 70 and 100 percent of the fees brought in by Krebs before he resigned, the liquidated damages provision appears to be a reasonable approximation of the damages suffered by plaintiff and, therefore, it would be enforceable.

*Great Lakes Eye Institute, P.C.*, 2011 WL 321636 at *3. Here, the Agreement does not reflect damages in terms of lost net income. On the contrary, under MSPC's reading of the Agreement, it is entitled to twice the annual revenue it lost from customers. *See* Amend. Compl. at PageID.91.

In its response, MSPC contends that the Agreement's provision for liquidated damages is consistent with the Michigan Supreme Court's decision in *Follmer, Rudzewicz & Co., P.C. v. Kosco*, 420 Mich. 394; 362 N.W.2d 676(1984), which "enforced an agreement that required an accountant to pay, based upon an agreed upon formula, for the clients who followed him from

11

his former employer to a new employer." MSPC Brief (ECF No. 14, PageID.174). The problem in this case is that unlike the agreement in *Follmer*, MSPC's Agreement does not set out a specific formula which can be applied to reach a just compensation or a reasonable approximation of MSPC's damages. For example, in *Follmer* the parties agreed to the following formula:

> If, at any time within three (3) years after the termination or expiration hereof, Employee directly or indirectly services any client of Employer, he shall immediately purchase from Employer the goodwill associated with such client. In view of the difficulty in evaluating goodwill, it is hereby agreed that the price of said goodwill shall be measured by the billable time spent by Employer and/or his employees in servicing such client during the 12-month period immediately preceding the date of termination or expiration extended at the billing rates in effect as of such date, but in no event, less than Two Thousand ($2,000.00) Dollars for each such client. It is mutually agreed that this amount will be paid by the Employee to the Employer over a five (5) year period of time with 20% down and the balance in sixty equal payments, including interest at 8 ½% per annum.

*Follmer*, 420 Mich. at 398, fn. 1. The cursory formula in MSPC's Agreement is a far cry from the specific terms set out in *Follmer*. Unlike the formula in *Follmer*, MSPC's Agreement does not contain any parameters for calculating the amount of the annual billings. In addition, MSPC's Agreement seeks double damages (twice the annual billings).

In summary, the Agreement's provision for liquidated damages is not based on a reasonable approximation of the damages suffered by MSPC. This provision contains no formula for calculating the annual billings upon which the liquidated damages are based, no method of converting the billings into a particular amount of actual damages, and awards double damages. For these reasons, the Court concludes that this provision is invalid as a penalty. Accordingly, defendants' motion to dismiss Count II for breach of contract should be granted.

### 2.    Count III (tortious interference)

Finally, defendants contend that the Michigan Uniform Trade Secrets Act ("MUTSA") pre-empts MSPC's claim for tortious interference with contractual, business relations and/or future expectations. Here, MSPC alleged that its tortious interference claim arose from Stricker's alleged misappropriation of trade secrets:

> 40.    MSPC hired Stricker and clothed her with various confidential responsibilities with regards to its customers and clients' financial needs and services.
>
> 41.    Defendant Stricker was given access to and direct knowledge of MSPC's most sensitive trade secrets and confidential and proprietary information, along with access to its specialized computer programs and direct access to the executives of clients and customers.
>
> 42.    Defendant Stricker clandestinely, while on company premises and off premises at home, and before she resigned from MSPC to work at her competing business, misappropriated confidential information regarding MSPC clients.

Amend. Compl. at PageID.91.

Defendants rely on M.C.L. §445.1908 ("Displacement of other civil remedies"), which provides as follows:

> (1) Except as provided in subsection (2), this act displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.
>
> (2) This act does not affect any of the following (a) Contractual remedies, whether or not based upon misappropriation of a trade secret. (b) Other civil remedies that are not based upon misappropriation of a trade secret. (c) Criminal remedies, whether or not based upon misappropriation of a trade secret.

M.C.L. § 445.1908(1) and (2).

MUTSA provides a statutory action and remedies for misappropriation of trade secrets, *see* M.C.L. §§ 445.1903 and 1904, and also displaces conflicting tort remedies for

13

misappropriation of a trade secret. *Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 270 F. Supp. 2d 943, 945–46 (W.D. Mich. 2003).

> The critical inquiry for courts in determining whether a claim is displaced by the MUTSA is whether the claim in question is based *solely* on the misappropriation of a trade secret. *See Dura Global Technologies, Inc. v. Magna Donnelly Corp.*, No. 07-10945, 2009 WL 3032594, at *3 (E.D. Mich. Sept. 18, 2009) (quoting *Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 270 F.Supp.2d 943 (W.D.Mich.2003)).
>
> If a claim is based solely upon the misappropriation of a trade secret, "the claim must be dismissed." *Bliss Clearing Niagara, Inc.*, 270 F.Supp.2d at 947; *see also Dura Global Technologies, Inc.*, 2009 WL 3032594, at *3. Conversely, where "a cause of action exists in the commercial area not dependent on trade secrets, that cause continues to exist." *Id.*; *see also Dura Global Technologies, Inc.*, 2009 WL 3032594, at *3.

*American Furukawa, Inc. v. Hossain*, 103 F. Supp. 3d 864, 884 (E.D. Mich. 2015). In short, a tortious interference claim is not pre-empted when that claim is "based upon wrongful conduct independent of the misappropriation of trade secrets." *Bliss Clearing Niagara, Inc.*, 270 F. Supp. 2d at 950. *See also*, *Appalachian Railcar Services, Inc. v. Boatright Enterprises, Inc.*, 602 F. Supp. 2d 829, 854 (W.D. Mich. 2008) (MUTSA would not pre-empt claims for wrongful conduct that is conceptually independent of a trade-secret).

Here, MSPC's tortious interference claim is based upon defendant Stricker's alleged misappropriation of trade secrets. In an effort to salvage its claim, MSPC points to the allegation that Stricker had "direct access to the executives of clients and customers." PageID.91. Based on the Court's reading of the amended complaint, this allegation of "direct access" is presented as a part of the alleged misappropriation of the trade secrets, which included a wide variety of information including client lists and client files which should have been returned to MSPC. *See* Agreement at PageID.97 (¶ 5). For this reason, the tortious interference claim as alleged in Count III is pre-empted by MUSTA and should be dismissed. *See* M.C.L. §445.1908;

*American Furukawa, Inc.*, 103 F. Supp. 3d at 884; *Appalachian Railcar Services, Inc.*, 602 F. Supp. 2d 829, 854; *Bliss Clearing Niagara, Inc.*, 270 F. Supp. 2d at 945-46, 950.  Accordingly, defendants' motion to dismiss the tortious interference claim alleged in Count III should be granted.  However, based on the other facts alleged in the amended complaint, the undersigned recognizes that MSPC may be able to state a tortious interference claim which is entirely independent of MUSTA, and for that reason should be given the option to amend Count III.

### III.  RECOMMENDATION

Accordingly, I respectfully recommend that defendants' motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(1) (ECF No. 11) be **DENIED**, and that defendants' motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6) be **GRANTED** as to Count II (breach of contract) and Count III (tortious interference).

I further recommend that plaintiff MSPC be given the option to amend Count III to include a claim for tortious interference which is entirely independent of MUSTA.

Dated:  August 21, 2020                     /s/ Ray Kent
                                            United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).