UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MANVILLE & SCHELL, P.C.,

    Plaintiff,

v.

HANNAH C. STRICKER, and
BOOKKEEPING SOLUTIONS OF
TRAVERSE CITY, L.L.C.,

    Defendants.
_____/

Case No. 1:19-cv-281

Hon. Hala Y. Jarbou

**ORDER**

This is a civil action for theft of trade secrets (Count I) brought under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836. This court may exercise supplemental jurisdiction over three related state claims brought by Plaintiff: breach of contract with respect to a non-compete clause in the employment agreement between Plaintiff and Defendant (Count II), tortious interference with business relationships (Count III), and breach of fiduciary duty (Count IV). Defendant Hannah Stricker and Defendant Bookkeeping Solutions of Traverse City, L.L.C., which is owned by Stricker, jointly filed a motion to dismiss Count I for lack of subject matter jurisdiction and Counts II and III for failure to state a claim on which relief can be granted. (ECF No. 11.)[1] The matter was referred to the Magistrate Judge, who issued a Report and Recommendation (R&R) recommending that this Court deny the motion to dismiss with respect to Count I and grant the motion with respect to Counts II and III, with leave to amend pleadings for Count III. (R&R 15,

---

[1] Defendants did not argue for dismissal of Count IV. (*See id.*; *see also* Defs.' Resp. to Pl.'s Obj. to R&R 2, ECF No. 22 ("Count IV . . . was not discussed" in Defendants' motion to dismiss).)

ECF No. 20.)  The R&R did not make a recommendation with respect to Count IV.  Before the Court are Plaintiff Manville & Schell, P.C.'s objections to the R&R (ECF No. 21).

Under 28 U.S.C. § 636(b)(1) and Rule 72 of the Federal Rules of Civil Procedure, the Court must conduct de novo review of those portions of the R&R to which objections have been made. Specifically, the Rules provide that:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).

Plaintiff objects to the Magistrate Judge's dismissal of Counts II and III, and sought affirmation that the R&R did not dismiss Count IV. (Pl.'s Obj. to R&R 2.)  The Court will consider each objection in turn.

## I.      Count II

The Magistrate Judge made two findings with respect to Count II.  First, that Plaintiff sought only liquidated damages for its breach of contract claim, such that Count II rose or fell with the validity of the liquidated damages clause.  Next, that the liquidated damages provision covering the non-compete clause between Plaintiff and Defendant was unenforceable.  Plaintiff objects on both fronts.  It contends that the liquidated damages clause is valid, and that its breach of contract claim is not defeated even if the liquidated damages provision is found unenforceable.  (*Id.* at 3, 10-11.)  Plaintiff is correct on each issue.

Liquidated damages provisions are *ex-ante* measurements of the damages that will result from a breach of contract; liquidated damages is not an independent cause of action.  Liquidated damages are permissible.  *See Watson v. Harrison*, 36 N.W.2d 295, 296 (Mich. 1949) ("[T]he law permits the parties to ascertain for themselves, and provide in the contract, the amount of damages

which shall be paid on a breach."). The Magistrate Judge "conclude[d] that [Plaintiff's] breach of contract claim . . . is limited to the damages set forth" in the liquidated damages provision. (R&R 9.) However, Plaintiff did not limit their requested recovery to the liquidated damages provision. Their complaint requests "[d]amages for breach of contract and as specified in [the liquidated damages clause] . . . [and] any other lawful relief and/or equitable relief to which plaintiff may be entitled." (Am. Compl. ¶ 37, ECF No. 9.) Hence, with respect to Count II, Plaintiff demanded recovery either through the liquidated damages provision or by other remedies permitted for a breach of contract. Even if the liquidated damages clause were unenforceable, Plaintiff would be able to maintain their breach of contract claim.

However, the liquidated damages provision is valid and enforceable. The provision reads: "[Defendant] agrees to pay [Plaintiff] an amount equal to twice the annual billings of any and all customers and accounts of [Plaintiff] that are lost to [Plaintiff] through [Defendant's] violation of the "non-compete" terms of this agreement." (Non-Compete Agreement ¶ 9, ECF No. 9.) The Magistrate Judge found multiple issues with the clause. First, he found that the phrase "annual billings" is vague and undefined and fails to specify how the term is to be calculated. (R&R 10 (unclear "whether the term 'annual billings' refers to the amount billed or the amount of money actually received or what year or years are used to determine the customers' 'annual billings'").) The Judge also stated that the clause was super-compensatory and "not based on a reasonable approximation of the damages" because "annual billings" appeared to refer to gross income, not net income, and because the clause entitles Plaintiff to double annual billings. (R&R 11, 12.)

But *Follmer, Rudzewicz & Co., P.C. v. Kosco*, 362 N.W.2d 676 (Mich. 1984) strongly supports Plaintiff's position. *Follmer* found two separate liquidated damages provisions enforceable. The first one read, in relevant part, that "[liquidated damages] shall be measured by

3

the *billable time spent* . . . in servicing such client during the 12-month period immediately preceding the date of termination." *Id.* at 678 n.1 (emphasis added). Though the clause is clearer than Plaintiff's with respect to fixing the time period for calculating damages, the phrase "annual billings" seems no more ambiguous than "billable time spent." The same clause also imposed a minimum price per client, *id.*, but it is hard to see how a price floor gives much guidance with respect to the true value of "billable time spent" over a 12-month period. The *Follmer* court upheld a second provision, which read "Employee . . . shall pay to the Company . . . an amount equal to three (3) times the first year's insurance sales commission payable with respect to any insurance policy purchased by [any] customer in connection with insurance services rendered by Employee." *Id.* at 678 n.2. Though the term "annual" may be slightly ambiguous (does it mean the past 12 months? the past fiscal year?), it is no more vague a timeframe than "the first year's . . . commission." Thus, considering both clauses addressed by *Follmer*, the phrase "annual billings" at issue here is not so vague or difficult to calculate as to be unenforceable.

*Follmer* also demonstrates that Plaintiff's liquidated damages provision is not super-compensatory such that it constitutes a penalty. Like "annual billings," the phrase "billable time spent" also appears to encompass gross income rather than net income. *Id.* at 678 n.1. Gross income, then, can be a reasonable approximation of damages. And it is hard to see how "double annual billings" should constitute a super-compensatory penalty when "three times the first year's . . . commission" does not. *Id.* at 678 n.2.

The validity of a liquidated damages clause is context-specific. *Papo v. Aglo Restaurants of San Jose, Inc.*, 386 N.W.2d 177, 181 (Mich. 1986) ("The distinction between a valid liquidated damages clause and an illegal penalty depends on the relationship between the amount stipulated to in the liquidated damages clause and the subject matter of the cause of action."). In the context

of accounting services, pegging damages to billings is reasonable. *See Follmer*, 362 N.W.2d at 676. It may be difficult to determine how long a client will stay with a given accounting firm or when, if ever, a client lost to a competitor will return. Thus, it is reasonable to fix damages for violation of a non-compete clause to two years' worth of a client's business. Such a measure does not presume that a client is permanently lost to competition, nor that the client would have never left but for a fresh competitor. Plaintiff may win back its clients lost to Defendant, or perhaps those clients were looking to leave Plaintiff soon anyway. Two years' worth of annual billings is a reasonable measure of uncertain damages in this context. Therefore, the Court will not adopt the Magistrate Judge's recommendation with respect to Count II. Plaintiff is permitted to maintain its breach of contract claim, and may seek liquidated damages in relation to the alleged breach.

## II.     Count III

The Magistrate Judge determined that the Michigan Uniform Trade Secrets Act ("MUTSA") preempted Plaintiff's claim for tortious interference and recommended that Count III be dismissed. (R&R 13.) However, the Judge reasoned that the failure of Count III may be the result of inartful pleading rather than a genuine lack of a cause of action. The R&R suggests that Plaintiff be granted leave to amend Count III so that preemption under MUTSA can be avoided, if possible.

Plaintiff's complaint indicates that its tortious interference claim arose from Defendant's misappropriation of trade secrets:

> 40. [Plaintiff] hired [Defendant] and clothed her with various confidential responsibilities with regards to its customers and clients' financial needs and services.
>
> 41. Defendant . . . was given access to and direct knowledge of [Plaintiff's] most sensitive trade secrets and confidential and proprietary information, along with access to its specialized computer programs and direct access to the executives of clients and customers.

5

> 42. Defendant . . . clandestinely, while on company premises and off premises at home, and before she resigned from [Plaintiff] to work at her competing business, misappropriated confidential information regarding [Plaintiff] clients.

(Am. Compl., PageID.91.)

The relevant portion of MUTSA reads: "[T]his act displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret . . . . This act does not [apply to] . . . [o]ther civil remedies that are not based upon misappropriation of a trade secret." Mich. Comp. Laws §§ 445.1908(1)-(2). "The critical inquiry for courts in determining whether a claim is displaced by the MUTSA is whether the claim in question is based *solely* on the misappropriation of a trade secret." *Am. Furukawa, Inc. v. Hossain*, 103 F. Supp. 3d 864, 884 (E.D. Mich. 2015). A claim based solely on the misappropriation of a trade secret "must be dismissed," whereas "a cause of action . . . in the commercial area [that is] not dependent on trade secrets . . . continues to exist." *Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 270 F. Supp. 2d 943, 947 (E.D. Mich. 2003).

The Magistrate Judge found that Plaintiff's tortious interference claim "is based [solely] upon [Defendant's] alleged misappropriation of trade secrets." (R&R 14.) This Court agrees. Though Plaintiff alleges that part of Defendant's tortious interference came from "direct access to the executives of clients and customers" (Am. Compl., PageID.91), that "direct access" came from a "wide variety of information including client lists and client files which should have been returned to [Plaintiff]," which are really trade secrets. (R&R 14.)

This marks a broader deficiency in Plaintiff's tortious interference claim. Under Plaintiff's Defend Trade Secrets Act (18 U.S.C. § 1836) claim, they seek damages for "misappropriation, conversion, and theft of *proprietary* and *confidential information* and trade secrets wrongfully taken in the amount of actual loss caused by the misappropriation of [the] trade secret." (Am.

Compl., PageID.89 (emphasis added).)  Hence, in Count I, Plaintiff characterizes "proprietary and confidential information" as material encompassing trade secrets under the DTSA.  Yet somehow "confidential and proprietary information" should *not* be treated as trade secrets under Count III.  (*Id.* PageID.91.)  Perhaps Plaintiff is referring to different types of confidential and proprietary information between Counts I and III, but that is not clear from their complaint or objections to the R&R.

Finally, Plaintiff contends that the allegations in this case parallel the complaint in *Bliss*, where the court held a tortious interference claim was not preempted.  *See Bliss*, 270 F. Supp. 2d at 943.  Plaintiff argues that *Bliss* "was mostly about alleged misappropriated trade secrets, but included in the general allegations were references to *other improper acts related to confidential information*."  (Pl.'s Obj. to R&R, ECF No. 21, at 14) (emphasis added.)  Yet the survival of plaintiff's tortious interference claim in *Bliss* was not due to separate allegations regarding misuse of confidential information.  The tortious interference claim was sustained because of allegations that *had nothing to do with confidential information at all*.  The *Bliss* court found that the intentional interference claim was independent from theft of trade secrets because, earlier in the complaint, the plaintiff alleged that the defendant had "labeled and marketed its replica and parts using [plaintiff's] trademark and included [plaintiff's product] name in its marketing and informational materials." *Bliss*, 270 F. Supp. 2d at 949-50.  With respect to its tortious interference claim, Plaintiff has not alleged anything other than the misappropriation of materials and information meant to be kept within the business.  *Bliss* does not support Plaintiff's position and there is no indication that Plaintiff's tortious interference claim is based on anything other than theft of trade secrets.

Accordingly, Count III is preempted by the MUTSA and should be dismissed. Because Plaintiff may be able to allege facts demonstrating that its tortious interference claim is not solely based on the misappropriation of trade secrets, it will be granted leave to amend its pleadings with respect to Count III.

### III.     Count IV

Defendants' motion to dismiss did not address Plaintiff's claim for breach of fiduciary duties, though the motion itself appeared to seek dismissal of all claims. (Mot. to Dismiss 2)("As pled, Plaintiff's claims are legally defective and should be dismissed.").) Because Defendants did not advance any arguments regarding Count IV, the Magistrate Judge did not consider whether the claim should be dismissed. In their objections to the R&R, Plaintiff sought affirmation that Count IV was not subject to dismissal. In their response to Plaintiff's objections, Defendants do not contend that Count IV should be dismissed. Accordingly, Plaintiff's claim for breach of fiduciary duties has gone unchallenged and is not subject to dismissal by Defendants' motion to dismiss or the R&R.

Accordingly,

**IT IS ORDERED** that Plaintiff's objections (ECF No. 21) are **GRANTED** with respect to Count II, while the rest of Plaintiff's objections are **DENIED.** The Report and Recommendation of the Magistrate Judge (ECF No. 20) is **APPROVED** and **ADOPTED IN PART** as the Opinion of the Court, except with respect to its recommendation regarding Count II.

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss (ECF No. 11) is **GRANTED** with respect to Count III of Plaintiff's amended complaint (ECF No. 9) and **DENIED** with respect to Counts I and II.

**IT IS FURTHER ORDERED** that Count III of the amended complaint is **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff is granted leave to amend its complaint with respect to Count III. Plaintiff shall have 28 days to submit an amended complaint.

Dated:   October 30, 2020                              /s/ Hala Y. Jarbou
                                                                         HALA Y. JARBOU
                                                                         UNITED STATES DISTRICT JUDGE